UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SCOTT JOHNSON,

          Plaintiff,

    v.

AUTOZONE, INC.,

          Defendant.

Case No. 17-cv-02941-PJH

**ORDER AWARDING ATTORNEYS' FEES**

Re: Dkt. No. 37

Plaintiff Scott Johnson's motion to award attorneys' fees came on for hearing before this court on May 8, 2019. Plaintiff appeared through his counsel, Dennis Price. Defendant AutoZone, Inc. ("AutoZone") appeared through its counsel, Conor Mack. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

On May 22, 2017, Johnson filed this action against AutoZone, asserting two causes of action: (1) violation of 42 U.S.C. §§ 12101, et seq., the Americans with Disabilities Act of 1990 (the "ADA"); and (2) violation of California Civil Code §§ 51–53, the Unruh Civil Rights Act (the "Unruh Act"). Compl., Dkt. 1. The complaint alleged that defendant's store imposed two access violations under the ADA. First, plaintiff alleged that defendant's accessible parking spaces had impermissible slopes. Id. ¶¶ 12–17, 34–35 ("the failure to provide level parking is a violation of the law"). Second, plaintiff alleged that defendant provided an insufficient number of accessible parking spaces. Id. ¶¶ 18–21, 36–37 ("the failure to provide two accessible parking spaces at the Store is a violation

of the ADA").  Plaintiff's complaint sought injunctive relief, damages, and fees and costs.

Consistent with General Order No. 56, the parties met and conducted a joint inspection at the AutoZone store on August 28, 2017.  Dkt. 38-1 ¶ 2.  On August 30, 2017, AutoZone indicated in writing that it was prepared to remove the impermissible slope barrier, which was the only barrier identified in plaintiff's complaint that AutoZone believed was meritorious.  Id. ¶ 3 & Ex. B.  On October 2, 2017, AutoZone served a Federal Rule of Civil Procedure 68 offer of judgment to plaintiff in the amount of $8,000, in addition to removal of the impermissible slope barrier.  Id. ¶ 4 & Ex. C.  On February 14, 2018, AutoZone served a second Rule 68 offer in the amount of $12,000.00, in addition to removal of the same access barrier.  Id. ¶ 8 & Ex. H.

On February 27, 2019, plaintiff filed a motion for summary judgment and requested two forms of relief:  (1) an order directing AutoZone to provide and maintain an accessible parking space at its store located at or about 5747 Pacheco Blvd., Pacheco, California; and (2) judgment in favor of plaintiff for $8,000.  Dkt. 29.  Plaintiff moved for summary judgment based only on the impermissible slope access violation.  See id. at 2–3.  Plaintiff did not address his allegation that defendant provided an insufficient number of accessible spaces in his motion for summary judgment.

On March 12, 2019, defendant filed a statement of non-opposition, stating that it "will not, and does not, oppose" plaintiff's summary judgment motion.  Dkt. 32.

On March 18, 2019, this court issued an order granting plaintiff's unopposed motion for summary judgment.  In particular, plaintiff submitted unrebutted evidence showing that he was denied public accommodations by the defendant because of his disability because of an inadequately-designed accessible parking space.  Because plaintiff established a violation of the ADA, he also established a violation of the Unruh Act.  See Molski v. M.J. Cable, Inc., 481 F.3d 724, 731 (9th Cir. 2007); Cal. Civ. Code § 51(f).  The court found the injunctive relief remedy appropriate (to create parking accommodations as required by the ADA) and issued judgment in plaintiff's favor for $8,000.

1   On April 1, 2019, plaintiff moved for an award of attorneys' fees in the amount of

2   $43,284.30 and costs in the amount of $2,524.30 (Dkt. 37), and defendant has opposed

3   the motion (Dkt. 38).

**DISCUSSION**

**A.    Legal Standard**

A district court may, in its discretion, allow the prevailing party in an ADA action a
reasonable attorney's fee, including litigation expenses and costs. 42 U.S.C. § 12205.
"The Supreme Court has explained that, in civil rights cases, the district court's discretion
is limited.  A prevailing plaintiff under the ADA should ordinarily recover an attorney's fee
unless special circumstances would render such an award unjust." Jankey v. Poop Deck,
537 F.3d 1122, 1130 (9th Cir. 2008) (internal quotation marks and citations omitted).

"A 'reasonable' fee is a fee that is sufficient to induce a capable attorney to
undertake the representation of a meritorious civil rights case.  The district court must
strike a balance between granting sufficient fees to attract qualified counsel to civil rights
cases and avoiding a windfall to counsel.  The way to do so is to compensate counsel at
the prevailing rate in the community for similar work; no more, no less." Vogel v. Harbor
Plaza Ctr., LLC, 893 F.3d 1152, 1158 (9th Cir. 2018) (internal quotation marks and
citations omitted).

"The most useful starting point for determining the amount of a reasonable fee is
the number of hours reasonably expended on the litigation multiplied by a reasonable
hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  "[T]he fee applicant bears
the burden of establishing entitlement to an award and documenting the appropriate
hours expended and hourly rates." Id. at 437.  The fee applicant must "submit evidence
supporting the hours worked and rates claimed.  Where the documentation of hours is
inadequate, the district court may reduce the award accordingly." Id.

"There is a strong presumption that the lodestar figure represents a reasonable
fee." Morales v. City of San Rafael, 96 F.3d 359, 364 n.8 (9th Cir. 1996); Perdue v.
Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010) ("the presumption is a 'strong' one").

United States District Court
Northern District of California

"Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). In Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir. 1975), the Ninth Circuit adopted a 12-factor test for determining reasonable fees. Those factors—to the extent they are not subsumed in the lodestar calculation—may warrant an adjustment, but adjustments are appropriate only in "rare" and "exceptional" cases. Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000). "[A] percentage or across-the-board approach" to reducing fees is appropriate "when the district court provides a reasonable explanation for the cut." Ferland, 244 F.3d at 1150.

**B.    Analysis**

First, defendant argues that the court should not award any fees to plaintiff because plaintiff is not the prevailing party and, even if he is the prevailing party, the court should award fees only for work on certain theories underlying plaintiff's successful claims. Second, the parties dispute the appropriate billing rate for plaintiff's attorneys and the merits of particular billing entries (i.e., the lodestar). Third, the parties dispute whether the court should deviate from the lodestar under the Kerr factors. Fourth, defendant argues that plaintiff should not recover any fees or costs incurred after the expiration of AutoZone's October 2, 2017 Rule 68 offer of $8,000. The court addresses these issues in turn.

### 1.    Whether Plaintiff Is the Prevailing Party, and the Level of Plaintiff's Success

Under the ADA, attorneys' fees are recoverable by a prevailing party. 42 U.S.C. § 12205. "For a litigant to be a 'prevailing party' for the purpose of awarding attorneys' fees, he must meet two criteria: he must achieve a material alteration of the legal relationship of the parties, and that alteration must be judicially sanctioned." Jankey, 537 F.3d at 1129–30. Here, judgment was entered for $8,000 in favor of plaintiff. Plaintiff is a prevailing party, as he can enforce that judgment.

1     "[I]n civil rights cases, the district court's discretion is limited.  A prevailing plaintiff

2     under the ADA should ordinarily recover an attorney's fee unless special circumstances

3     would render such an award unjust."  Id. at 1130 (internal quotation marks and citations

4     omitted).  "Consequently, recovery is the rule rather than the exception."  Id. at 1131

5     (internal quotation marks omitted).

6          Defendant's arguments that the court should exercise its discretion to deny

7     plaintiff's motion for attorneys' fees in its entirety are unavailing.  Defendant first argues

8     that although plaintiff prevailed, he "could have resolved this case nearly two years ago

9     for exactly the judgment issued by this Court, but chose instead to continue litigating at

10    bloated rates."  Opp., Dkt. 38 at 4.  That argument does not challenge plaintiff's status as

11    a prevailing party.  Rather, it is an argument that plaintiff's award should be capped at the

12    Rule 68 offer amount.  The court addresses that argument below.

13         Defendant next argues that this court should decline to award attorneys' fees

14    under the ADA based on a California state court case concerning an award of fees under

15    the California Fair Employment and Housing Act.  That California state court opinion—

16    addressing California law—is not apposite authority with respect to plaintiff's entitlement

17    to fees under the ADA.

18         Defendant next argues that plaintiff only succeeded on one of the two barriers to

19    access he initially alleged, even though plaintiff's complaint asserted a single ADA cause

20    of action that encompassed both alleged access violations.  Defendant argues that

21    plaintiff prevailed on his theory that defendant's accessible parking spaces had

22    impermissible slopes, but not his theory that defendant had an insufficient number of

23    accessible parking spaces.

24         It is true that causes of action are evaluated separately to determine which parties

25    prevailed.  Hensley, 461 U.S. at 434–36.  Here, plaintiff asserted two causes of action.

26    The first was for violation of the ADA, and the second was for the Unruh Act.  See Compl.

27    Plaintiff prevailed on both.  Plaintiff does not lose his status as a prevailing party with

28    respect to a claim because he did not prove the truth of each fact or theory alleged in his

5

complaint in support of that claim.

To the extent plaintiff did not prevail on each particularly-alleged access violation, the court assesses whether "plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award[.]"[1] Hensley, 461 U.S. at 434. "Application of this principle is particularly important in complex civil rights litigation involving numerous challenges to institutional practices or conditions. . . . Although the plaintiff often may succeed in identifying some unlawful practices or conditions, the range of possible success is vast. That the plaintiff is a 'prevailing party' therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." Id. at 436.

Even if plaintiff achieved "significant" relief, that "does not answer the question of what [fee award] is 'reasonable' in light of that level of success." Id. at 438–39. Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill." Id. at 436.

"There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." Id. at 436–37; cf. Rodriguez v. Barrita, Inc., 53 F. Supp. 3d 1268, 1289–90 (N.D. Cal. 2014) (imposing a 20% across-the-board lodestar reduction where discrete portions of the litigation were attributable to the pursuit of

---

[1] It is "immaterial" if "only a small damages amount was recovered" on a Title III claim because "damages are not available under Title III but attorneys fees are." Eversole v. Palmer, 234 F. App'x 694 (9th Cir. 2007) (citing Molski, 481 F.3d at 730); Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1120 (9th Cir. 2000) (injunctive relief in ADA makes victory more than "technical").

1   unsuccessful access violations).

2        Under Hensley, the court is left to consider the significance of the overall relief

3   obtained by plaintiff in relation to the hours reasonably expended on the litigation.  First,

4   the court must evaluate plaintiff's counsel's billing records and excise any unreasonably-

5   expended time, which the court explains when assessing the lodestar in the sections that

6   follow.  Second, the court compares plaintiff's relief to only those reasonably-expended

7   hours.

8        Here, plaintiff obtained significant results in the form of injunctive relief with respect

9   to the slope violation and two $4,000 statutory penalties based on the same violation—

10  one penalty for his initial visit to the store and a second for all subsequent visits.

11  However, "the inquiry does not end with a finding that the plaintiff obtained significant

12  relief.  A reduced fee award is appropriate if the relief, however significant, is limited in

13  comparison to the scope of the litigation as a whole."  Hensley, 461 U.S. at 440.

14       Plaintiff obtained no relief based on his insufficient number of accessible spaces

15  allegations, and the lodestar figure would unreasonably compensate plaintiff's counsel for

16  work on those allegations.  Here, as contemplated by Hensley, plaintiff "achieved only

17  partial or limited success," and "the product of hours reasonably expended on the

18  litigation as a whole times a reasonable hourly rate" would yield an excessive award,

19  even though "plaintiff's claims were interrelated[.]"  461 U.S. at 436.

20       A difficulty arises because this suit cannot be neatly parsed into "a series of

21  discrete claims" because there was limited motion practice, and the tasks related to the

22  insufficient number of spaces claim are not readily distinguishable from the slope claim.

23  See Hensley, 461 U.S. at 435.  That is not only because plaintiff's counsel did not identify

24  what portion of each billing entry was spent toward each particular access violation.  It is

25  because, at the stage of litigation that this case reached, the attorneys' tasks were

26  generally "devoted generally to the litigation as a whole, making it difficult to divide the

27  hours expended on a claim-by-claim basis."  Id.  For example, by the time plaintiff filed

28  his motion for summary judgment, he had abandoned his insufficient number of parking

7

spaces theory and advanced argument only regarding the excessive slope access violation. <u>See</u> Dkt. 26 at 2–3 (Case Management Conference statement arguing defendant had an insufficient number of parking spaces); Dkt. 27 ("Plaintiff's counsel informs the Court that the number of parking spaces is no longer an issue.").

The court has examined plaintiff's billing records and identified tasks that took more time to complete due to the abandoned access violation. The court accordingly reduces the time spent on those tasks by 40% to account for the fact that those tasks would likely have occurred absent the abandoned claim, but they would have demanded less time.[2] For example, plaintiff's counsels' work on site inspections and reports, mediation and settlement conferences, and case management conferences all required discrete amounts of time working on issues relating to each access violation.[3] The court does not reduce those billing entries by 50% because, even though plaintiff abandoned 50% of his claimed access violations, tasks entail administrative necessities that are not economized when half of the underlying substance is removed (for example, traveling to

---

[2] The court accordingly reduces the time spent in 28 billing entries by 40%: 7/23/2015 M. Potter entry for 0.9 hours; 7/23/2015 M. Potter entry for 0.7 hours; 5/04/2016 M. Potter entry for 0.7 hours; 3/22/2017 R. Handy entry for 0.6 hours; 5/19/2017 R. Handy entry for 2.5 hours; 6/19/2017 P. Grace entry for 0.3 hours; 6/19/2017 P. Grace entry for 0.2 hours; 6/20/2017 P. Grace entry for 0.3 hours; 7/19/2017 R. Handy entry for 0.9 hours; 8/28/2017 M. Melton entry for 3 hours; 8/28/2017 M. Melton entry for 0.3 hours; 8/29/2017 M. Melton entry for 0.1 hours; 8/29/2017 S. Gunderson entry for 0.2 hours; 8/30/2017 P. Grace entry for 0.2 hours; 10/05/2017 P. Grace entry for 0.2 hours; 10/08/2017 P. Grace entry for 0.3 hours; 10/09/2017 P. Grace entry for 0.3 hours; 11/28/2017 P. Grace entry for 0.2 hours; 12/07/2017 M. Melton entry for 0.3 hours; 1/26/2018 M. Melton entry for 1 hours; 1/31/2018 M. Melton entry for 0.3 hours; 1/31/2018 M. Melton entry for 6 hours; 2/18/2018 P. Grace entry for 0.2 hours; 2/20/2018 P. Grace entry for 0.2 hours; 3/13/2018 D. Price entry for 1 hours; 3/13/2018 D. Price entry for 0.2 hours; 3/27/2018 M. Melton entry for 2 hours (the court notes that this date is likely an administrative error, as Melton attended the CMC on March 22, 2018); and 3/22/2018 P. Grace entry for 0.2 hours.

[3] Plaintiff's argument that his success on the slope violation also constitutes success on the insufficient number of spaces violation is unavailing. The complaint alleges the violations separately, and plaintiff did not advance this novel argument on summary judgment. Even if plaintiff now believes he could have prevailed on both access violations, he did not in fact prevail on one and instead voluntarily abandoned it. Hours spent litigating access barriers on which plaintiff prevailed are reasonable. Fees based on time spent litigating later-abandoned barriers, if even they were "nonfrivolous, and raised in good faith," would be excessive in light of plaintiff's overall success. <u>See</u> <u>Hensley</u>, 461 U.S. at 436.

a meeting, preparing the cover page of a filing, etc.).

### 2. Calculating the Lodestar

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433.

### a. The Reasonable Hourly Rate

To determine a reasonable hourly rate, the court looks to "the prevailing rate in the community for similar work." Vogel, 893 F.3d at 1158. "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 979 (9th Cir. 2008). "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Id. at 980. "[R]ate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990). Courts in this district have evaluated this plaintiff's counsel's fees in numerous cases.

Plaintiff requests an hourly rate of $650 for Mark Potter, Russell Handy, and Phyl Grace given their experience. See Potter Decl. (Dkt. 37-4) ¶¶ 6–8. Each has recently been awarded $425 per hour by multiple courts. See Arroyo v. Aldabashi, Case No. 16-cv-6181-JCS, 2018 WL 4961637, at *5 (N.D. Cal. Oct. 15, 2018) ($425/hour for Potter and Grace); Love v. Griffin, Case No. 18-cv-00976-JCS, 2018 WL 4471073, at *8 (N.D. Cal. Aug. 20, 2018), report and recommendation adopted, 2018 WL 4471149 (N.D. Cal. Sept. 17, 2018) ("rate of $425.00 per hour . . . [is] reasonable given Ms. Grace's experience and the work performed"); Johnson v. Altamira Corp., Case No. 16-cv-05335-NC, 2017 WL 1383469, at *4 (N.D. Cal. Mar. 27, 2017), report and recommendation adopted, 2017 WL 1365250 (N.D. Cal. Apr. 14, 2017) ($425/hour for Potter); Shaw v. Five M, LLC, Case No. 16-cv-03955-BLF, 2017 WL 747465, at *5 (N.D. Cal. Feb. 27,

2017) ($425/hour for Potter).[4]  Given their experience and the prevailing rate in the

community for work similar to what was conducted in this action, the court finds an hourly

rate of $425 is appropriate for Potter, Handy, and Grace.

Plaintiff requests an hourly rate of $500 for Mary Melton, Dennis Price, Isabel

Masanque, Chris Carson, and Amanda Lockhart.  As an initial matter, plaintiff provides

absolutely no information concerning Lockhart's qualifications, so the court finds that

plaintiff has not met his burden to justify her billing rate at any amount.[5]  Although not

explicitly requested in his motion, plaintiff also seeks fees based on a rate of $500/hr for

Amanda Seabock.  Finally, plaintiff submits bills and requests fees for someone identified

as "P. Price," although plaintiff does not address the identity or qualifications of that biller

whatsoever.  Accordingly, the court finds that plaintiff has not met his burden to justify

P. Price's billing rate at any amount and excludes those hours from plaintiff's fees award.[6]

_____

[4] Plaintiff cites a single order that granted fees to his counsel outside of the $425/hour
prevailing rate described above.  In that case, an order granting a motion for default
judgment—where defendants had not appeared in the action and had "not opposed or
otherwise responded to Plaintiffs' motion"—awarded attorneys' fees based on an hourly
rate of $650 for Potter, Handy, and Grace.  See Report and Recommendation Regarding
Plaintiff's Motion for Default Judgment, Case No. 18-cv-03907-EDL (March 11, 2019,
N.D. Cal.), Dkt. 25.  This court finds that lone order granting an unopposed motion does
not accurately reflect the prevailing rate in the community for work similar to this action.
First, to support its reasonable rate determination, that order cited cases that concerned
work substantially different from the work performed in this action.  See Civil Rights Educ.
& Enf't Ctr. v. Ashford Hosp. Tr., Inc., Case No. 15-cv-00216-DMR, 2016 WL 1177950, at
*1 (N.D. Cal. Mar. 22, 2016) (awarding fees in a complicated class action case brought
against "54 hotels [that] are spread among multiple states"); Elder v. Nat'l Conference of
Bar Examiners, Case No. 11-cv-00199-SI, 2011 WL 4079623, at *4–5 (N.D. Cal. Sept.
12, 2011) (awarding fees in a case that set "new precedent" and caused "the defendant
to change a policy which impacts potentially hundreds of individuals each year across
California," reasoning that the complexity of the case was similar to "a complex class
action which was litigated over a number of years and which secured significant benefits
for hundreds of thousands of individuals across the state"); see also Rodriguez, 53 F.
Supp. 3d at 1278 (noting that "numerous cases" supported a finding that the prevailing
rate for an attorney with over two decades of litigation experience was $495/hour, but
awarding $550/hr given that defendants "do not contest that $550/hour is a reasonable
rate" and that counsel "served as a skilled and persuasive advocate for her client over the
course of this litigation," including through trial).

[5] Plaintiff writes that "Attorney Amanda Lockhart is qualified to bill at $500 per hour" but
then describes the qualifications of someone named Seabock.  Mot. at 6; Potter Decl.
¶ 13.  Plaintiff does not submit any billing records for Lockhart, so no fees are awarded
based on her work.

[6] The court accordingly excludes five billing entries:  2/19/2019 P. Price entry for 0.1

Melton, D. Price, Masanque, Carson, and Seabock have similar levels of experience. See Mot., Dkt. 37-1 at 4–6; Potter Decl. ¶¶ 9–13. D. Price and Carson have recently been awarded $300 to $350 per hour by courts in this District. See Johnson v. RK Inv. Properties, Inc., Case No. 18-cv-01132-KAW, 2019 WL 1575206, at *7 (N.D. Cal. Mar. 18, 2019) ($350/hour for Price), report and recommendation adopted, 2019 WL 1571071 (N.D. Cal. Apr. 11, 2019); Johnson v. Shri Jai Ranchhodrai, Inc., Case No. 17-cv-06482-VKD, 2018 WL 5617228, at *10 (N.D. Cal. Oct. 29, 2018) ($300/hour for D. Price); Arroyo, 2018 WL 4961637, at *2 (N.D. Cal. Oct. 15, 2018) ($350/hour for Carson and D. Price); Love v. Griffin, 2018 WL 4471073, at *8 ($350/hour for D. Price). Given their experience and the prevailing rate in the community for work similar to what was conducted in this action, the court finds an hourly rate of $300 is appropriate for Melton, D. Price, Masanque, Carson, and Seabock.

Plaintiff requests an hourly rate of $410 for Sara Gunderson, Elliott Montgomery, and Bradley Smith. They have similar levels of experience and graduated law school between five and eight years ago. Potter Decl. ¶¶ 14–16. Other courts have found approximately $250/hr an appropriate rate for plaintiff's firm's junior-most attorneys, which accords with the prevailing rates in this District. See Lopez v. Garcia Apartments, LLC, Case No. CV1403315ABPLAX, 2015 WL 13427757, at *3 (C.D. Cal. Mar. 6, 2015), vacated and remanded on other grounds, 676 F. App'x 634 (9th Cir. 2017) ($250 per hour for Lockhart). Given their experience and the prevailing rate in the community for work similar to what was conducted in this action, the court finds an hourly rate of $250 is appropriate for Gunderson, Montgomery, and Smith.

**b.    The Number of Hours Reasonably Expended**

Plaintiff has met his initial burden by submitting contemporaneous billing records to support his request for fees. Dkt. 37-5. Defendant challenges many of plaintiff's

---

hours; 2/21/2019 P. Price entry for 0.2 hours; 2/21/2019 P. Price entry for 0.3 hours; 2/28/2019 P. Price entry for 0.3 hours; 3/4/2019 P. Price entry for 0.1 hours.

counsel's individual billing entries, as well as plaintiff's request more generally, as being

excessive, duplicative, or unnecessary.

"In calculating the lodestar, district courts have a *duty* to ensure that claims for

attorneys' fees are reasonable, and a district court does not discharge that duty simply by

taking at face value the word of the prevailing party's lawyer for the number of hours

expended on the case. Rather, a district court must ensure that the winning attorneys

have exercised 'billing judgment.'" Vogel, 893 F.3d at 1160 (internal quotation marks and

citations omitted). The court addresses three categories of unreasonable billing records.

First, plaintiff submitted records of hours that his counsel spent on entirely different

cases. Plaintiff's counsel explained at the hearing that the firm's method of time-tracking

used during at least part of the time it was working on this case relied on party name

rather than case number, so certain time spent on other actions against AutoZone were

mistakenly attributed to this matter.[7] For example, plaintiff's counsel concedes that they

mistakenly submitted time entries for work related to Jimmie Johnson's role as a

mediator, even though Jimmie Johnson played no role in this case. Reply, Dkt. 39 at

9:3–4. Instead, it appears that Jimmie Johnson had some role as a mediator in a

different suit between plaintiff and AutoZone. Plaintiff cannot collect fees for that time.[8]

But plaintiff's counsel's admission at the hearing that the design of its time-keeping

system was inherently unreliable cannot be more generally ignored. Although defendant

was able to identify this particular, glaring misattribution of time because they recognized

Jimmie Johnson and his role in a different case, the misattribution of billing entries

relating to Jimmie Johnson are not the only symptoms of plaintiff's counsel's inherently-

infected recordkeeping practices. For example, defendant challenged plaintiff's counsel's

---

[7] Plaintiff's counsel explained that the firm now tracks time by case number rather than name and as a result expects fewer cross-case errors, although counsel did not indicate when that system was implemented, or whether it was implemented retroactively for ongoing matters.

[8] The court accordingly excludes two billing entries: 4/2/2018 Montgomery entry for 0.1 hours; 4/2/2018 Montgomery entry for 0.1 hours.

two-hour billing entry described as "[p]repared for mediation conference" as excessive given the lack of complexity of the matter. Opp. at 11. On reply, plaintiff conceded that time spent "to prepare for mediation conference" was actually "related to another Autozone matter . . . . inadvertently logged to the wrong case." Reply at 8:27–9:3.[9]

As yet another example, plaintiff's counsel seeks fees for time spent working with investigators and their reports in a manner that highly suggests the same defective recordkeeping practices infected those entries. Specifically, Potter worked with an unnamed investigator in July 2015 and then reviewed "Investigator Douglas Clark's report and photos[.]" Dkt. 37-5 at 2. Potter spoke with Clark ten months later, in May 2016. Ten months after that, in March 2017, Handy "reviewed Investigator Tyler Anderson's report and photos" and spoke with Anderson. Id. Five months later, in August 2017, Melton spent some time working with "Investigator Time Wegman." Id. at 3. In February 2019, Masanque spent more time working with Wegman, and she also worked with "investigator Hedal Kadric." Id. at 8. Masanque later drafted Wegmans' and Kadric's declarations in support of plaintiff's summary judgment motion. Neither Clark nor Anderson submitted any declaration to this court. Moreover, Potter only seeks fees for a single investigator. Dkt. 37-5 at 1 ("Investigator $1,600.00"); Dkt. 37-4 ¶ 4 ("I paid my investigator $1,600 to conduct the investigations in this case, including both the pre-litigation inspection and the inspection under General Order 56. That is my investigator's going rate. He did not present me a formal invoice."). Potter is clearly seeking the costs of engaging a single investigator, yet two investigators submitted declarations to this court. And plaintiff's counsel seeks fees for directing and reviewing work performed by a total of four (or perhaps five) investigators.

Although the discrepancies are too great to be fully reconciled by the court, the most likely explanation appears to be that plaintiff misattributed time entries relating to work with investigators other than Wegman and Kadric to this action as a result of the

_____

[9] The court accordingly excludes one billing entry: 1/30/2018 Melton entry for 2 hours.

1   same infected recordkeeping practices that caused them to misattribute work with Jimmie

2   Johnson to this case.  Plaintiff's counsel's inability to accurately account for the time they

3   spent working on this matter is undoubtedly related to the number of attorneys they

4   staffed on the case—a number the court is not even able to ascertain with certainty.

5   Plaintiff's counsel staffed this straightforward case with between 10 and 13 attorneys,

6   depending on how one counts P. Price, Seabock, and Lockhart's involvement in the

7   matter.  Such staffing makes plaintiff's counsel's reliance on their billing records more

8   pronounced—and accordingly errors in those records more corrupting—because it

9   reduces the ability of any individual attorney to identify errant entries upon general review

10  of the billing records.

11          Rather than remove these uncertain billing records regarding investigators, the

12  court will reduce plaintiff's reported hours across-the-board by 10% to account for the

13  inherent unreliability caused by its admittedly-deficient billing practices.  A 10% reduction

14  is appropriate where "the fee applicant submits billing records that . . . the district court

15  cannot practicably rely on . . . to determine a reasonable number of hours," especially

16  considering that "the district court could simply cut the number of hours or the lodestar

17  figure by as much as 10% (without explanation)." Gonzalez v. City of Maywood, 729

18  F.3d 1196, 1204 n.4 (9th Cir. 2013) (citing Moreno v. City of Sacramento, 534 F.3d 1106,

19  1112 (9th Cir. 2008)).  The 10% reduction will be applied after the court removes all

20  individually-identified unreasonable billing entries.

21          Second, defendant challenges plaintiff's counsel's "estimated" billing entries for

22  time they expected to spend after the fees motion was filed.  Plaintiff did not address

23  defendant's argument in his reply brief.  Those estimates are plainly not reliable

24  representations of time spent by counsel working on this matter, nor do they purport to

25  be.  Instead, they are estimates of time plaintiff expected to spend, yet plaintiff has not

26  submitted any supplemental information or declaration indicating what time was actually

27  spent.  Certain of those estimates obviously never came to pass at all.  For example,

28  plaintiff seeks fees for 8 hours of Potter attending "oral argument" on plaintiff's motion for

fees, block-billed with other tasks.  Dkt. 37-5 at 11.  But D. Price—not Potter—attended

the hearing, and plaintiff has not filed any supplemental briefing or declaration indicating

either the identity of the attorney who performed the other estimated tasks or the time

those tasks actually took.[10]  Consequently, those billing entries are insufficient to support

an award of fees for the time they report.[11]  See Hensley, 461 U.S. at 433 ("Where the

documentation of hours is inadequate, the district court may reduce the award

accordingly.").

Third, a district court may impose a percentage reduction in hours that are billed in

a block format.  See Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007).  A

plaintiff must document and submit evidence demonstrating the reasonable hours

expended in the litigation, and "block billing makes it more difficult to determine how

much time was spent on particular activities."  Id.  Plaintiff submitted a number of "block-

billed" time entries.  To the extent each of the activities billed is reasonable, the court

does not impose any reduction on the hours billed across those tasks.  At least one entry

describes time spent on both reasonable and unreasonable tasks without any indication

as to how much time was spent on each.  Masanque's February 27, 2019 billing entry

concerning plaintiff's motion for summary judgment reads "drafted Notice and Motion,

PNA, SUF, and other documents in support of Plaintiff's Motion for Summary Judgment,

---

[10] At the hearing, D. Price requested that the court substitute his name and hourly rate for Potter's for at least the "attend oral argument" portion of Potter's block-billed estimated time entry, but he did not inform the court how many of the claimed 8 hours correspond to his appearance.  The court accordingly awards plaintiff fees for 0.4 hours for D. Price's attendance at the May 8, 2019 hearing, at the rate this court has determined is reasonable for D. Price.  See Dkt. 41 (hearing lasted 19 minutes).

[11] The court accordingly excludes three billing entries:  EST Potter entry for 0.3 hours; EST Potter entry for 2 hours; EST Potter entry for 8 hours.  The estimated 0.3 hour entry is excluded for the additional reason that counsel must exercise billing judgment when litigating a case.  Counsel are not permitted to ignore the billing judgment requirement and then separately bill for time spent evaluating billing records to retroactively implement billing judgment standards when seeking fees.  See, e.g., Hensley, 461 U.S. at 437 ("The applicant should exercise 'billing judgment' with respect to hours worked and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.") (citation omitted); Moreno, 534 F.3d at 1111 ("The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client.").

United States District Court
Northern District of California

compiled exhibits and instructed staff to file[.]" Dkt. 37-5 at 10. Although Masanque

billed for time she spent drafting a statement of undisputed facts (SUF) in conjunction

with the motion, plaintiff never filed such a statement. See, e.g., Dkt. 29 (notice and

motion); Dkt. 29-1 (PNA); Dkts. 29-3–29-11 (exhibits). The time spent drafting the SUF

was unreasonable because plaintiff never filed it and because plaintiff's counsel knew or

should have known they would never file it. An independent statement of undisputed

facts was not permitted, and parties must meet and confer prior to jointly submitting a

statement of undisputed facts. Civ. L.R. 56-2; Civil Pretrial Instructions, Judge Hamilton

¶ A.3. Given that Masanque drafted the statement on the same day plaintiff filed the

motion, and that plaintiff did not confer with defendant about filing the joint statement,

there appears to have been no hope of complying with this court's requirements prior to

drafting the statement of undisputed facts. Performing the knowingly-fruitless work was

unreasonable. Because the court is unable to excise the unreasonable portion of

Masanque's block-billed entry, the court reduces the length of the entry by 20%.

### 3. Whether to Deviate from the Lodestar Under the Kerr Factors

"There is a strong presumption that the lodestar figure represents a reasonable

fee." Morales, 96 F.3d at 364 n.8. Departure from the lodestar figure is only warranted in

"rare and exceptional cases." In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935,

942 n.7 (9th Cir. 2011) (quoting Fischer v. SJB–P.D., Inc., 214 F.3d 1115, 1119 n.4 (9th

Cir. 2000)). "Although in most cases, the lodestar figure is presumptively a reasonable

fee award, the district court may, if circumstances warrant, adjust the lodestar to account

for other factors which are not subsumed within it." Ferland v. Conrad Credit Corp., 244

F.3d at 1149 n.4; Fischer, 214 F.3d at 1119 (the court evaluates "the Kerr factors that are

not already subsumed in the initial lodestar calculation").

"Kerr identifies twelve factors relevant to a determination of reasonable attorneys'

fees: (1) the time and labor required; (2) the novelty and difficulty of the questions

involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of

other employment by the attorney due to acceptance of the case; (5) the customary fee;

(6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d at 942 n.7 (quoting Kerr, 526 F.2d at 70). "Many of these factors are 'subsumed within the initial calculation of hours reasonably expended at a reasonable [hourly] rate.'" Id. (quoting Hensley, 461 U.S. at 434 n.9). The court "accounts for the following factors in the lodestar computation: (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, (4) the results obtained, and (5) the contingent nature of the fee agreement." Gonzalez, 729 F.3d at 1209 n.11; see also In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d at 942 n.7 ("At least one factor is no longer valid—whether the fee was fixed or contingent.").

The court considers the Kerr factors presently.

First, the time and labor required are accounted for in the lodestar computation, as those are exactly the factors making up the lodestar figure.

Second, the novelty and difficulty of the questions involved are accounted for in the lodestar computation. Gonzalez, 729 F.3d at 1209 n.11.

Third, the skill requisite to perform the legal service properly is accounted for in the lodestar computation. Id.

Fourth, the preclusion of other employment by the attorney due to acceptance of the case is reflected in the prevailing hourly rate in the community. As with all attorneys, the hourly fee compensates attorneys for the lost opportunity to work on other matters. Moreover, the large number of cases plaintiff's attorneys handle on his behalf and the firm's self-styled "assembly line" staffing model strongly suggest that this is the type of matter the firm seeks out and can fluidly incorporate into its operations, such that it did not take on the matter at the preclusion of other opportunities.

Fifth, the customary fee is accounted for in the lodestar computation. The lodestar

computation identifies the community's customary hourly rates and assesses the time reasonably spent on this litigation. The product of those figures constitutes what one would expect to be the customary fee for handling this case—precisely what the lodestar measures.

Sixth, it is no longer valid to consider whether the fee is fixed or contingent (In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d at 942 n.7), and to the extent it is valid, that factor is subsumed into the lodestar computation (Gonzalez, 729 F.3d at 1209 n.11).

Seventh, regarding the time limitations imposed by the client or the circumstances, neither party argues this factor justifies a departure from the lodestar. Mot at 14; Opp. at 9. The court agrees.

Eighth, the amount involved and the results obtained were addressed when discussing the level of plaintiff's success under the Hensley standard, discussed above. This factor justifies a departure from the lodestar for the reasons already addressed.

Ninth, the experience, reputation, and the ability of the attorneys is reflected in the attorneys' hourly rates, which is a component of the lodestar calculation.

Tenth, the undesirability of the case does not justify a departure from the lodestar calculation, and neither party argues otherwise. The case is similar to thousands just like it that plaintiff has brought in recent years in the Eastern and Northern Districts of California, which recently have been brought primarily by plaintiff's counsel in the present action. That the same counsel have brought so many similar cases on behalf of the same plaintiff is good evidence that this case is not undesirable.

Eleventh, the court considers the nature and length of plaintiff's attorneys' professional relationship with the client. The Ninth Circuit has not spoken directly on this factor's meaning, and courts rarely address it. Nevertheless, the courts and commentators that have considered this factor agree in a multitude of contexts that "[o]ften the fee for a client with a continuing relationship is less than that which an attorney would normally charge another client for representation on a single matter." 3 Law and Prac. of Ins. Coverage Litig. § 30:38 ("Lawyers and clients with a regular, on-

going relationship often reach some sort of understanding as to fees."); see also, e.g., Wilson v. Liberty Life Assurance Co. of Bos., No. CV04-1373-PHX-NVW, 2006 WL 8440913, at *4 (D. Ariz. Aug. 16, 2006) ("A regular client with substantial recurring representation may warrant a lower fee or rate in light of the benefit to the lawyer of that history and prospect of substantial, recurring fees from the same client."); Peebles v. Miley, 439 So. 2d 137, 143 (Ala. 1983) ("[A]n attorney who is the attorney for a client who has frequent and continuing legal problems may make appropriate adjustment of the amount of the fee charged.  What would be a reasonable fee to such a client may not be the same as for a client who sees the lawyer for the first time."); Younger v. Glamorgan Pipe & Foundry Co., 418 F. Supp. 743, 795 (W.D. Va. 1976), vacated on other grounds, 561 F.2d 563 (4th Cir. 1977) ("Attorneys often vary their fees depending upon the nature and length of their relationship with an individual client.  Regular clients, for example, may be charged a lower fee than a walk-in client."); Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 719 (5th Cir. 1974) ("A lawyer in private practice may vary his fee for similar work in the light of the professional relationship of the client with his office.  The Court may appropriately consider this factor in determining the amount that would be reasonable."); Judith Resnik et. al., Individuals Within the Aggregate: Relationships, Representation, and Fees, 71 N.Y.U. L. Rev. 296, 346 (1996) ("Courts have defined the relevance of a professional relationship not in interpersonal but in economic terms--that expectations of future business could provide a basis for discounting current services."); Michael David Strasavich, Court-Ordered Attorney's Fees in Contract Actions: What Is Reasonable?, 19 J. Legal Prof. 301, 306 (1994) ("What constitutes a reasonable fee for a client who has frequent and continuing legal problems may not be reasonable for a client who sees the lawyer for the first time.  Long-standing clients of any business may receive preferential treatment, and the business of delivering legal services is no different in this regard.").

The court has found no authority suggesting that this factor is intended to have any other effect.  Moreover, the realities of private legal practice confirm the interpretation

19

United States District Court
Northern District of California

1　endorsed by the few courts and commentators who have explicated the factor.  Law firms

2　often charge a lower hourly rate to their repeat customers, or "core clients."  Although that

3　reality is typically imposed by the competitive market for legal services over the course of

4　a client's relationship with counsel, market forces would not be expected to produce the

5　same fee-tempering result for core clients who predominantly bring cases for which their

6　attorneys are compensated by another party.  For example, an individual who predictably

7　brings many successful lawsuits might be courted by a competing law firm with the

8　promise of lower fees.  However, that enticement is unlikely to persuade a client whose

9　attorneys' fees are paid for by defendants, so the formal billing records for a case

10　handled by the higher-priced firm would reflect an hourly rate that may be reasonable for

11　the district generally, but unreasonable for that particular client.  This factor therefore

12　requires the court to assess whether the market realities that firms typically face when

13　courting the business of a repeat client are reflected in the fee award.

14　　　　Plaintiff and his counsel in this action have had a long and fecund professional

15　relationship.  Counsel in this action have represented plaintiff in scores of similar suits,

16　perhaps better measured in the hundreds.  One news report estimated that Johnson is a

17　plaintiff in more than 2,900 lawsuits in the Eastern District of California and more than

18　900 in this district.  <u>See</u> Sam Stanton, <u>Serial ADA lawsuit filer indicted in Sacramento on</u>

19　<u>federal tax fraud charges</u>, Sᴀᴄʀᴀᴍᴇɴᴛᴏ Bᴇᴇ (May 26, 2019), https://www.sacbee.com/

20　news/local/crime/article230745859.html.  That report's figures accord with the court's

21　review of this district's docket, and in fact plaintiff's counsel embraced Johnson's and his

22　firm's prodigious litigation partnership at the hearing.  Pursuant to this factor, it is

23　apparent that plaintiff and his counsel have a longstanding professional relationship

24　based on repeatedly pursuing a similar style of lawsuit for which attorneys' fees are

25　routinely awarded, inuring to the ongoing benefit of both Johnson and his counsel.  The

26　repeat nature, past length, and future prospects of the relationship—in addition to the

27　absence of any incentive for Johnson and his counsel to adjust the hourly billing rates to

28　reflect the market realities of their profitable relationship—constitute the type of

exceptional circumstance that justifies a downward-departure from the typical, prevailing rates in the community for plaintiff's counsel's services. The court did not consider this factor when assessing the prevailing rates in the community or the reasonable number of hours counsel spent on the action when making the lodestar calculation. As such, it is appropriate to reduce the lodestar by 5% given the nature and length of plaintiff's attorneys' professional relationship with the client.

Twelfth, the court addresses awards in similar cases. Here, similar cases assess awards based on the lodestar and consideration of the twelve <u>Kerr</u> factors. This court has calculated the lodestar and assessed the factors consistently with similar cases. To the extent the analysis in other cases reached a different magnitude of attorneys' fees based on a different number of reasonable hours worked or a different adjustment based on the <u>Kerr</u> factors, that magnitude of those fee awards are in line with this case.

### 4. Defendant's October 2, 2017 Rule 68 Offer

Federal Rule of Civil Procedure 68 provides that "a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms," and "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68.

When assessing whether the judgment finally obtained is more favorable than the unaccepted offer, "[t]he award of pre-offer costs . . . must be added to the final judgment amount or, alternatively, deducted from the offer amount." <u>SunEarth, Inc. v. Sun Earth Solar Power Co.</u>, Case No. 11-cv-4991-CW, 2014 WL 1569494, at *2 (N.D. Cal. Apr. 18, 2014); <u>see also</u> <u>Champion Produce, Inc. v. Ruby Robinson Co.</u>, 342 F.3d 1016, 1023 n.1 (9th Cir. 2003) ("Where an award of pre-offer costs will render the plaintiff's judgment in excess of a Rule 68 offer, it is obviously inappropriate to use that offer as a reason to deny costs. Only if the costs are denied will the offer truly be higher than the judgment, thus justifying the denial."); <u>Bevard v. Farmers Ins. Exch.</u>, 127 F.3d 1147, 1148 (9th Cir. 1997) (comparing Rule 68 offer to sum of pre-offer costs and verdict).

Here, defendant's Rule 68 offer was equal to the judgment entered for plaintiff. Given that plaintiff incurred costs prior to that offer (e.g., a filing fee) and is entitled to those costs under the ADA, the Rule 68 offer was not greater than plaintiff's final judgment. Therefore, Rule 68 does not limit plaintiff's recovery.[12]

## CONCLUSION

For the foregoing reasons, plaintiff's motion for attorneys' fees and costs is GRANTED in part. Plaintiff's unchallenged request for $2,524.30 in costs is GRANTED in full. Plaintiff is awarded $14,231.90 in attorneys' fees.

The court reached that fee figure by first omitting plaintiff's impermissible billing entries described above. Next, the court adjusted each attorney's hourly rate as described above. Next, the court adjusted the time awarded for particularly-identified billing entries (or, in the case of attending the May 8, 2019 hearing, added an entry), as explained above. Next, the court calculated the lodestar by multiplying the court-approved hourly rates and the approved hours for each billing entry, and adding the results. That totaled $16,645.50. Next, the court reduced that computed lodestar figure by 10% to account for plaintiff's counsel's inherently-unreliable recordkeeping. That totaled $14,980.95. Finally, the court applied a 5% reduction to that figure to account for plaintiff's ongoing, fruitful business relationship with his counsel, arriving at the final figure $14,231.90.

**IT IS SO ORDERED.**

Dated: May 29, 2019

PHYLLIS J. HAMILTON
United States District Judge

---

[12] Defendant does not argue that its $12,000 offer on February 14, 2018 limits plaintiff's recovery.